UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**GLEN BORSELLA and JO-ANN BORSELLA,**

        Plaintiffs,

v.                                                Case No: 6:11-cv-1249-Orl-28GJK

**Brevard County Sheriff JACK PARKER and BRIAN JONES,**

        Defendants.
_____/

**ORDER**

This case arises from allegations that Brevard County Sheriff's Deputy Brian Jones ("Jones") violated the Fourth Amendment and various state laws in connection with his arrest of Glen Borsella ("Borsella"). Borsella and his wife have filed a ten-count Second Amended Complaint (Doc. 19) against Jones and Brevard County Sheriff Jack Parker ("Parker").[1]  The case is now before the Court on Defendants' Motion for Summary Judgment (Doc. 26), Plaintiffs' Opposition (Doc. 35), and Defendants' Reply (Doc. 37).

For the reasons set forth below, Defendants' motion must be granted with respect to Counts I, II, IV, VI, VII, VIII, and IX. Because none of Plaintiffs' federal claims

---

[1]The Second Amended Complaint alleges Fourth Amendment violations against Jones and Sheriff Parker (Counts I and II), a state law Intentional Infliction of Emotional Distress claim against Jones (Count III), state law Negligent Infliction of Emotional Distress claims against Jones and Parker (Counts IV and V), a state law Negligent Training claim against Parker (Count VI), a state law Negligent Supervision claim against Parker (Count VII), state law "Excessive Force" claims against Jones and Parker (Counts VIII and IX), and a state law Loss of Consortium claim against Jones and Parker (Count X).

survive summary judgment, the remaining state law claims—Counts III, V, and X—will be dismissed without prejudice so that Plaintiffs may, if they choose, pursue them in state court.

## I.   BACKGROUND[2]

On April 17, 2007, Jones made a traffic stop of Borsella after observing that the license plate displayed on Borsella's truck was not assigned to that vehicle and that the license plate decal had expired.[3] After Borsella pulled to the side of the road, Jones requested identification from him and told him to "get the fuck out" of the truck. Jones then handcuffed Borsella with his hands behind his back, but Jones did not double-lock the handcuffs, which would have prevented them from tightening further. Jones then shoved Borsella chest first onto the trunk of the police car to search him. After searching Borsella, Jones placed him into the backseat of the police car.

At some point Borsella began to complain that the handcuffs were too tight.[4] Jones did not loosen the handcuffs but instead told Borsella, "Fuck you." The handcuffs

---

[2] The facts included in the Background section reflect the record as viewed in the light most favorable to Plaintiffs, the non-moving parties. The court accepts these facts as true only for the purpose of summary judgment.

[3] Borsella eventually pleaded nolo contendere to two misdemeanor charges— "Attaching registration license plate not assigned unlawful," Fla. Stat. § 320.261, and "Unlawful to alter motion vehicle registration certificates, license plates, temporary license plates, mobile home stickers, or validation stickers or to obscure license plates," Fla. Stat. § 320.061.

[4] Borsella testified in his June 7, 2012 deposition that he did not complain to Jones about the handcuffs being tight until after Jones had searched him and put him into the police car—approximately forty minutes later. (Borsella Dep. at 54-55). Borsella's father, who was a passenger in Borsella's truck at the time of the stop, testified in his deposition that he heard Borsella complain about the handcuffs when Jones put Borsella into the police car. (Albert Borsella Dep., Doc. 32, at 27). In a declaration attached to Plaintiffs' Opposition, Borsella claims that hearing his father's

2

became tighter while Borsella sat in the backseat, causing his hands to turn color and swell and leaving a mark on his wrist.

After arresting Borsella, Jones transported him to the Brevard County Jail in the backseat of his police car.  When Jones arrived with Borsella outside the jail, a van of prisoners was being transferred inside. Jones then turned off his vehicle and got out to make a phone call.  For the next thirty-five minutes, Borsella sat in the backseat of the car with the windows up and the air-conditioning off.  It was a hot day and the heat in the vehicle caused Borsella to sweat profusely, with sweat and hair-styling products running into and stinging his eyes.  Borsella complained to Jones again that the handcuffs were too tight and also that he was thirsty and could not stay in the heat for long periods due to his heart condition.  Jones responded by telling Borsella, "Go fuck yourself."

After Borsella sat in the car for thirty-five minutes, Jones brought him into the jail, where a nurse screened his health.  Borsella told the nurse that he suffered from a bad heart, had high blood pressure, and took medications, but he did not complain about his hands or wrists and he denied being currently injured.[5]

A month after Borsella's arrest, he visited his family physician for complaints about pain in his hands and wrists.  The physician ordered a nerve conduction test,

---

testimony refreshed his memory, and that he now remembers that he actually began complaining about the handcuffs at the time Deputy Jones first searched him.  (Borsella Decl., Ex. 2 to Doc. 36, ¶ 2).  Because the particular timing of Borsella's complaints to Jones would not affect the outcome of Defendants' Motion for Summary Judgment, the Court need not decide whether to accept Borsella's later statements as true.

[5]Borsella states in his Declaration that he did not complain to the jail personnel or intake nurse about the tight handcuffs because the jailers intimidated him.  (Borsella Decl. ¶ 4).

3

which revealed borderline bilateral carpal tunnel syndrome. Borsella then visited a hand and wrist specialist, Dr. St. Mary, on July 12, 2007. Dr. St. Mary evaluated Borsella and concluded that Borsella's symptoms were not related to being handcuffed.

## II.   SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable factual inferences in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether

the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1262 (quoting Anderson, 477 U.S. at 251-52).

### III.   ANALYSIS

A. Excessive Force Claim Against Deputy Jones (Count I)

In Count I of the Second Amended Complaint, Plaintiffs allege that Jones's seizure of Borsella involved excessive force and therefore violated the Fourth Amendment.[6]  "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). To determine whether the amount of force used was excessive, "a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." Id. (quotation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). This "standard 'looks to the need for force, the amount of force used, and the injury inflicted.'"

---

[6] None of the parties have argued that the Fourteenth Amendment's protections for arrestees and pretrial detainees apply to Borsella's confinement in the police vehicle. Although "[c]laims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause," Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996), "[t]he precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit," Hicks v. Moore, 422 F.3d 1246, 1254 (11th Cir. 2005).  Nonetheless, "[t]he standard for showing excessive force in violation of the Fourteenth Amendment . . . is higher than that required to show excessive force in violation of the Fourth Amendment," Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009), and Jones would be entitled to summary judgment on Plaintiffs' excessive force claim even if this claim were analyzed under the Fourteenth Amendment instead of the Fourth.

Hamilton v. City of Jackson, Ala., 261 F. App'x 182, 186 (11th Cir. 2008 (quoting Jones v. City of Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997)). Other factors that should be examined "'inclu[de] the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Lee, 284 F.3d at 1197-98 (quoting Graham, 490 U.S. at 396).

Although the Fourth Amendment prohibits police officers from using excessive force during an arrest, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citation and quotation omitted). To be entitled to qualified immunity, a government official first must demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988) (quoting Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir.1983)). It is undisputed that Jones was acting within the scope of his discretionary authority during the events at issue. The Court therefore must grant qualified immunity unless Plaintiffs can demonstrate that the facts viewed in the light most favorable to them establish a constitutional violation by Jones and that it was clearly established at the time of the incident that Jones's actions were unconstitutional. See McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009). Courts are permitted to exercise discretion in determining which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand. Pearson, 555 U.S. at 236.

Qualified immunity applies to an excessive force claim unless every reasonable officer in the arresting officer's position would conclude that the force used was unlawful. Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993). Furthermore, "a minimal amount of force and injury . . . will not defeat an officer's qualified immunity in an excessive force case." Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000).

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Lee, 284 F.3d at 1197 (quoting Graham, 490 U.S. at 396). In fact, "the typical arrest involves some force and injury," Reese v. Herbert, 527 F.3d 1253, 1272 (11th Cir. 2008) (quotation omitted), and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," Graham, 490 U.S. at 396 (citation and quotation omitted).

*i.    Jones's use of force in handcuffing Borsella*

Plaintiffs claim that Jones used excessive force by handcuffing Borsella too tightly, not double-locking the handcuffs to prevent additional tightening, and refusing to loosen the handcuffs after Borsella complained they were hurting him. Notwithstanding Plaintiffs' arguments to the contrary, however, there is no evidence that the handcuffs caused Borsella more than minimal injuries.

Borsella did seek treatment from a hand and wrist specialist, Dr. St. Mary, for nerve damage in his hands and wrists after his arrest. (St. Mary Dep., Doc. 30). Dr. St. Mary has testified, however, that his opinion "within a reasonable degree of medical certainty" is that none of Borsella's symptoms were related to being handcuffed. (St. Mary Dep. at 27). Plaintiffs have not presented any evidence to dispute Dr. St. Mary's testimony or otherwise show that the handcuffs caused Borsella more than minimal injuries. Instead, Plaintiffs attempt to create an issue of fact by arguing that Dr. St. Mary "could not *completely* rule out the handcuffing causing nerve damage." (Pls.' Opp. Summ. J. at 7 (emphasis added)). Merely pointing out that Dr. St. Mary testified to having a "reasonable degree of medical certainty" as opposed to *complete* certainty does not create a genuine dispute of fact. Accordingly, there is no genuine dispute as to whether the painful handcuffing caused Borsella more than minimal injuries.

Although Jones arrested Borsella for relatively minor motor-vehicle violations and Borsella did not resist arrest or pose an immediate threat to Jones's safety, arrests typically involve handcuffing the suspect, and "[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." Rodriguez v. Farrell, 280 F.3d 1341, 1352 (11th Cir. 2002). Jones is therefore entitled to qualified immunity with respect to the force he used in handcuffing Borsella.

  ii.  *Borsella's confinement in police vehicle*

Plaintiffs also claim that Jones used excessive force by leaving Borsella in the backseat of a police vehicle for approximately thirty-five minutes on a hot day with the windows up and without air-conditioning. Viewing the facts in the light most favorable to Borsella, the temperature in the vehicle caused Borsella to sweat profusely, with sweat

8

and hair-styling products running into and stinging his eyes. (Borsella Dep. at 70). Beyond this discomfort, however, Borsella has not presented evidence that his confinement in the hot police car actually caused him any injury.

While leaving a suspect in an unventilated police car in extreme temperatures for a long period of time can give rise to a Fourth Amendment violation, see Burchett v. Kiefer, 310 F.3d 937, 945 (6th Cir. 2002) (leaving suspect in unventilated car in ninety-degree heat for three hours violated Fourth Amendment), Plaintiffs have not cited to any case law to establish that Borsella's confinement of only thirty-five minutes violated the Constitution.[7] Courts have, however, found that leaving a suspect in an unventilated vehicle in the hot sun for periods of ten and thirty minutes does not violate the Fourth Amendment. Glenn v. City of Tyler, 242 F.3d 307, 313-14 (5th Cir. 2001) (approximately thirty minutes); Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (ten minutes). In short, Jones did not violate the Fourth Amendment when confining Borsella in the police car. Jones is therefore entitled to qualified immunity with respect to this claim.

*iii.     Jones's threatening demeanor*

Plaintiffs further claim that Jones placed Borsella in fear of his life by acting in an "unhinged and threatening" manner, including by holding his hand near the butt of his firearm and cursing at him repeatedly. (Pls.' Opp. Summ. J. at 3). Nonetheless, even though such behavior was rude and perhaps unnecessarily aggressive under the

---

[7]Indeed, Plaintiffs do not cite any cases to support their excessive force claim, but instead refer in passing to "the statements of law stated in Defendants' Motion [for Summary Judgment]" while citing generally to two pages of Defendants' Motion for Summary Judgment. (Pls.' Opp. Summ. J. at 8).

9

circumstances,[8] it did not violate the Fourth Amendment. "While the Fourth Amendment provides restrictions on the interactions between law enforcement and citizens, it does not constitutionally require polite behavior or a steady demeanor by the police officer." DeRosa v. Rambosk, 732 F. Supp. 2d 1285, 1294 (M.D. Fla. 2010). Jones is therefore entitled to qualified immunity with respect to these allegations.

    *iv.    Jones's use of force in searching Borsella*

Plaintiffs also state that Jones "shoved" Borsella chest first onto the trunk of the police car to search him after he was handcuffed, (Pls.' Opp. Summ. J. at 4), but they have not presented evidence that Jones injured Borsella in any way by shoving him. Such minimal force does not violate the Fourth Amendment, see Nolin, 207 F.3d at 1257, and thus Jones is entitled to qualified immunity with respect to shoving Borsella.

    B.  Counts II, IV, VI, VII, VIII, and IX

In response to Defendants' Motion for Summary Judgment, Plaintiffs state that they "are unable to adduce sufficient evidence to fairly maintain their claims under Counts II, IV, VI, VII, VIII, and IX." (Pls.' Opp. Summ. J. at 1). Defendants are therefore entitled to summary judgment on these claims.[9]

    C.  Remaining State Law Claims

Plaintiffs' three remaining claims are state law claims. In light of the Court's disposition of Plaintiffs' federal claims—the only claims over which it has original jurisdiction—the Court declines to exercise supplemental jurisdiction over the remaining

---

[8] While Jones disputes cursing at Borsella, (Jones Dep. at 35), the Court accepts as true Borsella's description for the purpose of summary judgment.

[9] Although Plaintiffs state that they "withdraw" these claims, they have not moved to voluntarily dismiss this action or sought leave to amend the Second Amended Complaint.

state law claims. See 28 U.S.C. § 1367(c)(3). These claims will be remanded to the state court from which this case was removed so that Plaintiffs may, if they choose, pursue them in state court.

## IV.   CONCLUSION

In accordance with the foregoing, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment (Doc. 26) is **GRANTED** with respect to Counts I, II, IV, VI, VII, VIII, and IX of the Second Amended Complaint.

2. Defendants' Motion for Summary Judgment is **DENIED without prejudice** as to Plaintiffs' remaining state law claims. Pursuant to 28 U.S.C. § 1367(c), Plaintiffs' remaining state law claims—Counts III, V, and X—are hereby **REMANDED** to the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, Case No. 05-2011-CA-29629.

3. All other motions are **DENIED** as moot.

4. The Clerk is directed to enter a judgment providing that Plaintiffs shall take nothing from Defendants on Counts I, II, IV, VI, VII, VIII, and IX of the Second Amended Complaint and that the remaining state law claims have been remanded to state court. Thereafter, the Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida on January 31, 2013.

JOHN ANTOON II
United States District Judge

Copies furnished to:

Counsel of Record
Clerk of the Circuit Court, Eighteenth Judicial Circuit in and for Brevard County, Florida